Judge Owsley
delivered the Opinion of the Court.
By the decree from which this appeal was prayed. the appellants who were defendants in the court below, holding under an adverse patent, were directed to convey their legal title to the appellees, who claim under the following entry.
December 23rd. 1782.
David, Samuel, Robert, and James Steele, assignees of John Steele, enter one thousand acres of land on a Treasury warrant, No. 7204. on a small creek running into the Kentucky, supposed to be five miles below Leestown, beginning at a sycamore tree marked M. at the mouth of said creek, and running south east four hundred poles, thence north castwardly one hundred and sixty poles, thence down the river, including the bottom below said creek, for quantity,
The appellants rely upon their elder grant from the Commonwealth, and contest the validity of the entry set up by the appellees.
According to any view that we have been able to take of the entry, we are constrained to pronounce it an invalid one.
We have no hesitation in admitting that Lee’s town, from which, the creek upon which the land is decribed in the enty to he distant about five miles, is proved to have been notorious at the date of the enty, so that a subsequent locator could have had no difficulty in finding that object at which he would naturally commence his search, in attempting to ascertain the beginning of Steele's entry. But after having arrived at Leestown, he would he unable from any directions contained in the entry, by the exercise of ordinary diligence, to arrive, with any thing like certainty, at the beginning called for.
By adverting to the entry, he would perceive the beginning to he, a sycamore tree, marked M, at the *506 mouth of a small creek, and he would discover that the maker of the entry supposed the creek to run into the Kentucky, five miles from Leestown; but he would be left to conjecture whether, in supposing the distance from Leestown, the maker of the entry was governed, in his calculation, by the meanders of the river, or otherwise. The subsequent locator would, therefore, before be proceeded with his search for the beginning, be under the necessity of determining, in his own mind, upon the mute to compute the distance; and if, as it would be most probable a plain country man would do, he should conclude that, the distance upon a river of the size and description of the Kentucky, ought to be computed with its meanders, and should accordingly proceed, and actually measure five miles, he would, at about that distance, discover a small creek, at the mouth of which, he would also find a sycamore tree; and although he might not perceive any letter marked upon the tree, he would, probably be induced, from the coincidence between the distance, the creek and the tree, at which be had arrived, and those called for in the entry, to conclude that, in reasonable probability, he had arrived at the beginning of Steele’s entry. Under convictions like these, the subsequent locator would have no apprehensions of coming in collision with the entry of Steele, were he t.o attempt to locate land at the distance of four miles further down the Kentucky, on the creek now claimed by the appellees. as the one at the mouth of which Steele's entry calls to begin.
Distance, 5 miles, on the Kentucky river from Leestown, called for in an entry, shall be taken with the meanders of the river.
But in argument it was said, that the distance from Lee’s town down the Kentucky, called for in entry, should not be computed by following the meanders of the river, but on a direct line; and as the creek upon which the entry was surveyed, flows into the Kentucky at the distance of about five miles on a direct line, it was contended that the entry should be sustained, as one containing the requisit to precision and certainly of description. Were such however, admitted to be the correct rule for computing the distance, it would not follow that a subsequent locator would encounter no difficulty in finding, and knowing when found, the tree called *507 Cor as the beginning. He might, it is true, by using the necessary means for that, purpose, ascertain at what, point five miles on a direct line, would strike the river, and after doing so, ho might be able to find the creek upon which Steele’s entry was surveyod; but in doing all this, he would be put to extraordinary labor, and after finding the creek, he would be unable to discover the marked sycamore tree at its mouth. It is true, that he might, by ascending the creek the distance of twenty-six poles from its entrance into the river, discover a sycamore tree marked M, but it is not to be presumed, that in searching for a tree described by an entry to be at the mouth of a creek, an enquirer would, after failing to find the tree at the mouth, expect to find it by ascending the creek. It. is more reasonable to presume, that after being unable to find such a tree at t'.e mouth of the creek, the enquirer would conclude that the tree must be at tbe mouth of some other stream, and cease further examination up the creek. This conclusion would be the more natural, when, as in the case in question, the enquirer would be unable to learn certainly, from any thing contained in. the entry, how the distance from Lee’s town to flits beginning was intended by the locator to be computed; and when too, be would know that by computing this distance with the meanders of the river, the five miles would terminate about four miles short of the mouth of the creek at which he was searching for the tree. But we do not admit that the distance ought to be computed on a direct line from Leestown.
Where the usual course of traveling from one point on a river to another is a direct line, the distance in an entry shall be taken on that and net the meanders.
If the usual way of traveling, at the date of the entry, had been on a direct line, we should, upon proof of the fact, be inclined to give such a construction to the call for distance as would conform to the practice of the country; or if there were proved to have been, at that time, any particular route from Leestown most usually traveled; should have been disposed to compute the distance along that route; but we are not informed by the evidence that there was, at the date of the entry, any particular way of traveling from one point to the other, or that it was even practicable to pass in a *508 direct line from Leestown to the month of the creek upon which Steele’s survey was made. Whatever may therefore be the correct mode for computing the distance, it is evident that the appellees have not made out in proof a ease which will enable tho court to say that the beginning called for in the entry of Steele might, by the exercise of reasonable diligence, he found by a subsequent locator desirous of appropriating the vacant residuum.
Crittenden for appellants; Haggin for appellees.
The decree of the court below must, therefore, he reversed with cost, the cause remanded to that court. and the appellees bill dismissed with cost.